# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SOPHIA PAPPAS,

                    Petitioner,                Case Number: 15-CV-11701
                                            HONORABLE GERALD E. ROSEN

v.

ANTHONY STEWART,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Sophia Pappas' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the Huron Valley Women's Complex in Ypsilanti, Michigan pursuant to her convictions for arson of a dwelling house, conspiracy to commit arson of a dwelling house, sending explosives with intent to injure, and assault with intent to do great bodily harm less than murder. She seeks habeas relief on two grounds: insufficient evidence supported one of the elements of arson of a dwelling house, and sentence was based on inaccurate information. The Court denies the petition.

## I. Background and Procedural History

Petitioner's convictions arise from the firebombing of a house in Livonia on April 24, 2012. The Michigan Court of Appeals summarized the evidence leading to Petitioner's convictions are follows:

The prosecution presented evidence to establish that defendant, upset about the failure of her romantic relationship with Angela Passini as well as the impact it might have on her efforts to adopt two children, sought to exact harm upon Alana Faulk, a person whom Passini had begun dating. In seeking to exact this harm, defendant retained the assistance of Evelyen Lewek and Alvin Echols. According to Lewek, who describes herself as being known for hurting people, defendant asked her and Echols to "cut [Faulk's] throat" or "beat her until she stops breathing."[1] Lewek claimed that Echols and defendant agreed to a price of $2,000 for the killing. For approximately two days leading up to April 24, 2012, the group followed Faulk to and from her place of work at a bar in Inkster, Michigan, and familiarized themselves with Stanmoor Street in Livonia, where Faulk lived. Lewek testified that the group would "sit for hours out at night circling the house and just watching the neighborhood." Scott Gatscher, Faulk's neighbor who lived directly across Stanmoor Street, testified that on April 23, 2012, he saw a dark minivan or SUV driving slowly down the street without its lights on, parking intermittently.

Lewek testified that Echols came up with an idea to firebomb Faulk's house. On the night of April 24, 2012, defendant was driving the group in her Trailblazer, pulled into a gas station, and filled a small gas can with gasoline. The group also purchased a bottle of motor oil and three glass bottles of juice. Security camera footage from the gas station shows defendant and Lewek walking into the store and purchasing the items. Defendant drove the Trailblazer to Faulk's home, and the group saw that lights were illuminated in Faulk's bedroom, indicating that Faulk was in the house. Defendant drove several blocks away to a dark area, and Echols constructed three Molotov cocktails with the items purchased at the gas station. While Echols made the explosive devices, defendant and Lewek went to a local K-Mart and purchased handkerchiefs, which Echols used as fuses for the Molotov cocktails. When the explosives were completed, defendant drove the group back to Faulk's home and made sure the lights were still on in Faulk's bedroom. Defendant dropped off Echols in front of Faulk's house and drove the Trailblazer down the street a short distance to wait for Echols to return.

Faulk testified that on the night of April 24, 2012, she was lying in bed reading a book when she heard two loud bangs outside her window, with approximately ten seconds between the bangs. Faulk jumped out of bed, looked out the window, and saw a "wall of fire" burning the outside the

house.  Faulk ran out of the room.  Gatscher observed the flames from his front window and stated that he could see a bush in front of the house and the area behind the bush burning.  Gatscher picked up his cellular telephone to call 911 and walked outside to assist Faulk.  As Gatscher was walking out of his house, he noticed a figure walking toward a dark minivan or SUV parked down the street from Faulk's house. The figure got into the vehicle and the vehicle sped down the street. By the time Gatscher got to Faulk's front door, Faulk was outside the house and the fire had largely dissipated. Within five to ten minutes of the fire starting, police officers arrived on the scene.

Officer Eric Eisenbeis, a police officer with the city of Livonia, was the first officer to arrive on the scene.  Eisenbeis observed a charred, broken glass bottle, an intact glass bottle filled with liquid, and a red rag hanging from a tree outside the bedroom window.  Eisenbeis also observed that the outside of the bedroom window was charred and a pillar attached to the house appeared to be charred.  Eisenbeis spoke with Gatscher, who relayed the information about the dark minivan or SUV that fled the scene of the fire. Officer James Green, a police officer with the city of Livonia, was alerted to look out for a dark minivan or SUV, and he located a burgundy Trailblazer traveling south on Inkster Road.  Green conducted a traffic stop, and when he approached the vehicle, he could immediately smell gasoline. Defendant was the driver of the vehicle, Lewek was seated in the front passenger seat, and Echols was sitting in the back seat. Green observed a gas can sitting on the floor of the back seat and white latex gloves on the seat next to Echols.  Defendant told Green that she had picked up the two passengers at a friend's house and was taking them back to her house to babysit in the morning.  Green detained the occupants of the vehicle and radioed the stop to Eisenbeis. When it was determined that Faulk was familiar with defendant, defendant was arrested.

After the arrest, police were able to obtain text and Facebook message records for defendant and found that defendant engaged in various conversations in March and April 2012 in which she attempted to determine the identity of Faulk as well as other persons who may have been involved in relationships with Passini.  During questioning by police after her arrest, defendant made conflicting statements concerning the gas can and how she knew Lewek and Echols.

* * *

Lewek testified that initially, defendant wanted her and Echols to kill a man

3

with whom Passini may have been involved, and the three of them staked
out a hotel by the airport for a few days in an effort to locate the man.
Defendant then changed her plans, and Lewek understood that defendant
wished to harm a woman named April, who had been communicating with
Passini.  The three of them attempted to locate April a couple of times at an
apartment complex in Westland.  Unsuccessful yet again, defendant turned
her attention to Faulk.

*People v. Pappas*, No. 313751, 2014 WL 1234151, *1-2 (Mich. Ct. App. March 25,

2014).

Petitioner was charged in Wayne County Circuit with conspiracy to commit first-

degree murder, assault with intent to commit murder, arson, conspiracy to commit arson,

and sending explosives with the intent to injure.  Following a bench trial, she was

acquitted of conspiracy to commit first-degree murder, but convicted of arson of a

dwelling house, conspiracy to commit arson of a dwelling house, sending explosives with

intent to injure, and assault with intent to do great bodily harm less than murder.  On

November 26, 2012, she was sentenced to 9 to 20 years' imprisonment for the arson,

conspiracy to commit arson, and sending explosives with intent to injure convictions, and

5 to 10 years' imprisonment for the assault with intent to do great bodily harm less than

murder conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising these

claims:

I.      There was insufficient evidence to support conviction of arson of a
        dwelling house because there was no real structural damage to the house,
        just charring.

4

II.     Pappas was sentenced based on inaccurate information as she did not
        interfere with the administration of justice under OV 19, she merely made a
        failed attempt to do so.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences.

*People v. Pappas*, No. 313751, 2014 WL 1234151 (Mich. Ct. App. March 25, 2014).  She

filed an application for leave to appeal in the Michigan Supreme court, raising the same

claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied

leave to appeal.  *People v. Pappas*, 497 Mich. 856 (Mich. Sept. 5, 2014).

Petitioner then filed the pending habeas petition.  She raises the same claims raised

on direct review in state court.

## II.  Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA").  Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

(1)     resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined
by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

5

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

6

existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.   See 28 U.S.C. § 2254(e)(1).   A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  Discussion

### A.  Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented at trial to support her conviction for arson of a dwelling house.  Under Michigan law, the elements of arson of a dwelling house are: (1) the defendant willfully and maliciously burned a dwelling house and (2) the defendant intended to burn the dwelling house, or intentionally committed an act that created a very high risk of burning the house, and the defendant knew of that risk and disregarded it.  Mich. Comp. Laws § 750.72; *People v. Barber*, 255 Mich. App. 288, 294-95 (Mich. Ct. App. 2003).  Petitioner was convicted as an aider and abettor.  "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement."  *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines*, 597 N.W.2d 130, 135 (1999).  Petitioner focuses her sufficiency of the evidence argument on a single element.  She argues that the prosecution failed to prove beyond a reasonable doubt that Faulk's house was burned.

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim, finding "there was sufficient evidence for a reasonable finder of fact to conclude

that Faulk's home was burned to the extent necessary to support defendant's conviction." *Pappas*, 2014 WL 1234151 at *3. The Michigan Court of Appeals acknowledged there was no major damage to the structure of the home, but held that structural damage was not an element of the charged offense. *Id.* The state court noted that a police officer observed that the outside wall of the house near Faulk's bedroom and a pillar attached to the house were both charred. A fire investigator similarly testified that he observed a charred scorch mark above the shutters next to Faulk's bedroom window and that a pillar attached to the front of the house was charred. *Id.* The Michigan Court of Appeals held that the arson statute required only "minimal damage" to a home and that the damage described by the officer and investigator was sufficient to satisfy this threshold. *Id.*

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

9

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319)).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

On habeas review, a federal court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).  According the state court's findings of fact a presumption of correctness, the Michigan Court of Appeals' decision easily passes scrutiny under the deferential AEDPA standard.  The state court applied the correct constitutional test, relied on facts amply supported in the record, and did not

10

unreasonably apply clearly established constitutional law.  Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### B.  Scoring of Offense Variable 19

Next, Petitioner challenges the scoring of offense variable (OV) 19.  OV 19 provides that 10 points will be assessed when an offender interferes or attempts to interfere with the administration of justice.  Mich. Comp. Laws § 777.49(c). It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Petitioner's argument that the state court erred in scoring her sentencing guidelines is based solely on the state court's interpretation of state law.  It does not implicate any federal rights.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law.").  "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review."  *See Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007).

Moreover, the Michigan Court of Appeals expressly found that sufficient evidence supported the scoring of OV 19 and detailed the facts supporting that determination. *Pappas*, 2014 WL 1234151 at *4.  The Sixth Circuit repeatedly has recognized "'that a

state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). The state court's rejection of Petitioner's claim therefore was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  No certificate of appealability is warranted.  Nor should Petitioner be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be

taken in good faith. *See* FED. R. APP. P. 24(a).

**Conclusion**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed *in forma pauperis* on appeal is **DENIED**.


                                   s/Gerald E. Rosen
                                   United States District Judge

Dated:  April 12, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 12, 2016, by electronic and/or ordinary mail.

                                   s/Julie Owens
                                   Case Manager, (313) 234-5135

13